## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**KELLIE F.,**

      **Plaintiff,**

                                  **Case No. 1:20-cv-9013**

    **v.**                            **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kellie F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.   PROCEDURAL HISTORY

On January 17, 2018, Plaintiff filed an application for benefits, alleging that she has been disabled since May 6, 2016, due to migraine headaches, neck pain with radiculopathy, bilateral shoulder pain, polymyalgia rheumatica, hypothyroid, fatigue, depression, anxiety, and painful

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

bowel movements due to bowel resection. R. 112, 132, 214−15, 240. The application was denied

initially and upon reconsideration. R. 135−40, 142−44. Plaintiff sought a *de novo* hearing before

an administrative law judge. R. 145−60. Administrative Law Judge ("ALJ") Deanna Sokolski

held a hearing on September 24, 2019, at which Plaintiff, who was represented by counsel,

testified, as did a vocational expert. R. 49−93. In a decision dated October 23, 2019, the ALJ

concluded that Plaintiff was not disabled within the meaning of the Social Security Act from

May 6, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 27−41.

That decision became the final decision of the Commissioner of Social Security when the

Appeals Council declined review on May 29, 2020. R. 1−6. Plaintiff timely filed this appeal

pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 24, 2020, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[2] On that same day, the case was

reassigned to the undersigned. ECF No. 8. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on her alleged disability onset date. R. 40. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 6, 2016, her alleged disability onset date, and the date of the administrative decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine, status post cervical fusion, carpal tunnel syndrome on the right, cervicalgia, fibromyalgia, obesity, and left shoulder impingement syndrome. *Id.* The ALJ also found that Plaintiff's diagnosed hypothyroidism, GERD, migraine headaches, chronic fatigue, anxiety, depression, and adjustment disorder were not severe impairments. R. 30−31.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 31−33.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 33−39. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a radiologic technologist. R. 39−40.

At step five, the ALJ found that a significant number of jobs−*i.e.*, approximately 50,000 jobs as an information clerk; approximately 60,000 jobs as a general office helper; approximately 70,000 jobs as a sorter−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 40−41. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 6, 2016, her alleged

disability onset date, through the date of the decision. R. 41.

Plaintiff disagrees with the ALJ's findings at steps two, three, and four and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

## IV.   DISCUSSION

### A.   Migraine Headaches

Plaintiff challenges the ALJ's determination at step two of the sequential evaluation that, *inter alia*, Plaintiff's migraine headaches were not severe, and contends that the ALJ also erred when failing to consider Plaintiff's migraine headaches when crafting the RFC determination at step four. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 15; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1–2, 5. Plaintiff's argument is not well taken.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec*., 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL

5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140,

145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had

erroneously concluded that some of h[is] other impairments were non-severe, any error was

harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct.

14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she

found to be non-severe, such error would be harmless since she found other impairments to be

severe, engaged in the full five-step evaluation, and accounted for related possible limitations in

her RFC finding.").

As previously noted, the ALJ found that Plaintiff suffered from severe impairments, but

that her migraine headaches were not severe:

> [W]hile the claimant has occasional migraine headaches, they occur infrequently
> and do not cause significant functional limitations greater than the residual
> functional capacity detailed below (Exhibit 9F). Although these impairments
> [central hypothyroidism, GERD, migraine headaches, and chronic fatigue] are
> present in the medical record, the evidence does not substantiate that these
> impairments have imposed more than minimal limitations on the claimant's ability
> to perform basic work-related activities for at least twelve consecutive months. As
> such, they are nonsevere.

R. 30. In challenging the ALJ's finding in this regard, Plaintiff argues that symptoms caused by

her migraine headaches include left facial pain, scalp sensitivity, nausea, and interference of

activity due to photo phobia and phono phobia and that she experiences occipital/frontal

headaches with pain in the base of the skull. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 15

(citing R. 104, 1802); *Plaintiff's Reply Brief*, ECF No. 20, p. 2 (same). Plaintiff also points to her

hearing testimony that she experiences ten to twelve migraines per month, and which

incapacitate her for two to three days. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 15 (citing

R. 62–63); *Plaintiff's Reply Brief*, ECF No. 20, p. 2 (same). Plaintiff argues that the ALJ erred

when failing to account for Plaintiff's migraine headaches in the RFC determination because

"she could *potentially* be absent from work for 9 days out of the month," a number that, according to the vocational expert, "would be work preclusive." *Plaintiff's Reply Brief*, ECF No. 20, p. 2 (emphasis added).

      Plaintiff's arguments are not well taken. Other than Plaintiff's own reports, which are noted in her physicians' records, and her own hearing testimony, Plaintiff does not point to any objective medical evidence establishing that her migraine headaches impact her functioning. *See Plaintiff's Memorandum of Law*, ECF No. 18, p. 15; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1–2, 5. Similarly, Plaintiff refers to no medical opinion that identifies any functional limitations flowing from her migraine headaches; instead, Plaintiff merely relies on her own speculation. *See id*. As discussed in more detail below, the ALJ properly discounted Plaintiff's subjective statements. The mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec*., No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Moreover, as the ALJ specifically noted, the medical record reflected that Plaintiff's migraine headaches occurred only infrequently. R. 30. Notably, "[a] diagnosis alone, however, does not demonstrate disability." *Foley v. Comm'r of Soc. Sec*.,

349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir.

1990)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's]

argument incorrectly focuses on the diagnosis of an impairment rather than the functional

limitations that result from that impairment. A diagnosis of impairment, by itself, does not

establish entitlement to benefits under the Act"). Based on this record, Plaintiff has not

persuaded this Court that the ALJ erred at step two when finding that Plaintiff's migraine

headaches were not severe or in failing to include additional or different limitations in the RFC at

step four, as discussed in greater detail below. *See id.*; *see also Rutherford*, 399 F.3d at 554

(stating that an ALJ need include only "credibly established" limitations); *Kichline v. Saul*, No.

CV 20-2151, 2021 WL 2367620, at *5 (E.D. Pa. June 8, 2021) ("Because the record does not

show that Kichline's migraines caused more than a minimal functional impairment and the ALJ

provided substantial evidence to support his categorization, I find the ALJ did not err in finding

them non-severe."); *Grella v. Colvin*, No. 3:12-cv-2115, 2014 WL 4437640, at *18 (M.D. Pa.

Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot

be found in the medical record. No specific functional limitations were provided by any of

Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and

quotation marks omitted).

### B.    Mental Health Impairments

Plaintiff also challenges the ALJ's determination at step two of the sequential evaluation

that, *inter alia*, Plaintiff's mental impairments were not severe and she complains that the ALJ

failed to conduct a proper psychiatric review technique ("PRT") when considering those

impairments. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 15−20; *Plaintiff's Reply Brief*, ECF No. 20, pp. 2−6.[3] Plaintiff's arguments are not well taken.

At step two, the ALJ concluded that Plaintiff's mental impairments were not severe, explaining as follows:

> Additionally, the claimant's medically determinable mental impairments of anxiety, depression, and adjustment disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The claimant reported that she has depression and anxiety (Exhibit 3E, 2). She stated that she has problems completing tasks, concentrating, paying attention, and handling stress (Exhibits 7E, 11E). She reported that she takes medication for her depression, but she alleged that she is depressed because she is not able to do what she used to do. She added that she feels unstable and anxious. However, she admitted that she takes Cymbalta now, which has improved her symptoms and she does not see a mental health professional. In March 2018, the claimant's treatment notes show that she was having some sadness due to being out of work, leading to a diagnosis of an adjustment disorder with mixed anxiety and depressed mood. She was noted to worry about her financial situation, but she maintained a normal thought process (Exhibit 17F). The longitudinal medical evidence contains minimal treatment for mental health symptoms and minimal complaints regarding these symptoms. She has been prescribed Cymbalta by her primary care physician and her rheumatologist, but she rarely mentions mental health symptoms or complaints. She reports that she visits with her pastor at times. Overall, the claimant's mental health symptoms appear to controlled and stabilized with minimal, conservative treatment.
>
> Therefore, based on the evidence of record and further discussed below, the undersigned finds that the claimant has the following degree of limitation in the broad areas of functioning: no restriction in understanding, remembering, or applying information, no limitation in interacting with others, mild restriction with regard to concentrating, persisting, or maintaining pace, and no limitation adapting or managing oneself.[4] Because the claimant's medically determinable mental

---

[3] Plaintiff's challenges to the ALJ's RFC in connection with her mental impairments are addressed later in this Opinion and Order.

[4] A finding of no limitation in an area of mental functioning means that the claimant is "able to function in this area independently, appropriately, effectively, and on a sustained basis." 20

12

impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)). The State agency psychological consultants, Stacy Koutrakos, Psy.D., and Frank Gonzales, Ph.D., stated that the claimant does not have a severe mental impairment. The undersigned finds these assessments persuasive because [they are] supported by the longitudinal medical evidence contains minimal treatment for mental health symptoms and minimal complaints regarding these symptoms. Moreover, she has been prescribed Cymbalta by her primary care physician and her rheumatologist, but she rarely mentions mental health symptoms or complaints.

Lewis Lazarus, Ph.D., opined in March 2017 that the claimant has some difficulties with mental persistence, but no other significant issues (Exhibit 17F). The undersigned does not find this opinion persuasive because the totality of the claimant's medical record shows minimal symptoms and treatment for the claimant's mental impairments. Moreover, these impairments are well controlled and stabilized with medication.

R. 30−31. The Court finds no error with the ALJ's findings in this regard. *See Salles,* 229 F. App'x at 145 ("Beyond Salles's own testimony (about which the ALJ made properly-supported adverse credibility findings), there is no evidence that these four conditions resulted in functional limitations. The fact that Salles's gall bladder disease, hepatitis, and headaches from eye strain evidently were either not treated at all or were controlled by medication supports the ALJ's findings that these impairments were not severe."); *Metzger v. Saul*, No. CV 19-270, 2019 WL 3530442, at *5−6 (E.D. Pa. Aug. 2, 2019) (concluding that "substantial evidence supports the ALJ's determination that Plaintiff's depression was not a severe impairment" where "Plaintiff's depression was well-managed, and improved with the medication prescribed by her mental health provider"); *Rolick v. Berryhill*, No. CV 17-4481, 2019 WL 625599, at *5 (D.N.J. Feb. 14, 2019) (finding that while the claimant "does have mental health conditions that undoubtedly

---

C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(2)(a). A finding of a mild limitation means that the claimant's functioning "in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id*. at § 12.00F(2)(b).

produced symptoms, the ALJ had a more than adequate basis for concluding that those mental health conditions were not severe as that term is used within the Act" where the claimant's "mental health examinations demonstrated adequate mental functioning with intact thought processes, memory span, and concentration" and "[i]t would be inappropriate for this Court to substitute its own judgment in weighing the mental health evidence because the ALJ properly relied on substantial evidence in her determination that [the claimant's] mental health impairments were non-severe and caused only mild limitations"); *Marbury, Jr. v. Astrue*, No. CIV.A. 09-300, 2010 WL 3220039, at *9 (W.D. Pa. Aug. 12, 2010) ("This evidence indicated that Marbury's limitations from depression could be controlled with medication provides further support for the ALJ's decision that Marbury's mental impairment was non-severe.").

Plaintiff challenges the ALJ's findings in this regard, arguing that the opinion of Lewis Lazarus, Ph.D., a neuropsychologist who conducted a mental status examination on March 20, 2018, requires a finding that Plaintiff's mental impairments were severe. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 15–16, 19; *Plaintiff's Reply Brief*, ECF No. 20, pp. 3–4. Dr. Lazarus reported the results of his examination as follows:

> The claimant presented to this examination with a cooperative and friendly demeanor. Her manner of relating and social skills were adequate. The claimant appeared generally in accord with her stated age. She was appropriately, neatly and casually dressed. She was well groomed…. Gait, posture and motor behavior were all normal and eye contact was appropriate. Speech was fluent and clear with adequate expressive and receptive language functions. Thought processes were coherent and goal directed with no evidence of any hallucinations, delusions, or paranoia in the evaluation setting. Affect was dysphoric and mood was anxious.
>
> The claimant was noted to be alert and oriented in all spheres including knowing the current President of the United States. Recent and remote memory skills were considered to be intact. She was able to immediately recall 3/3 items and 3/3 items after a brief 5-10 minute delay. Attention and concentration were noted to be fair with *some difficulties with mental persistence*. She could do simplistic calculations but lost her train of thought when trying to do serial 3s. She was able to repeat only 4-5 digits forward and 4 digits in the reverse order on a digit span task.

14

> Intellectually, the claimant is estimated to be functioning in the low average-to-average range with a low average-to-average general fund of knowledge. Insight and judgment, at this time, are both considered to be good.

R. 1555 (emphasis added). Plaintiff contends that the ALJ improperly discounted as unpersuasive Dr. Lazarus' finding that Plaintiff had "some difficulties with mental persistence" even though Dr. Lazarus was an examining doctor with a specialty in the relevant field and a state agency consultant with specialized knowledge of the disability program. *Plaintiff's Reply Brief*, ECF No. 20, p. 4.

Plaintiff's arguments are not well taken. For claims filed after March 27, 2017,[5] the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency

---

[5] As previously noted, Plaintiff's claim was filed on January 17, 2018.

15

factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

Furthermore, the regulation requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and to articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, the ALJ, after detailing evidence relating to Plaintiff's mental impairments, specifically considered Dr. Lazarus' opinion that Plaintiff had some difficulty with mental persistence but found that opinion to be unpersuasive "because the totality of the claimant's medical record shows minimal symptoms and treatment for the claimant's mental impairments. Moreover, these impairments are well controlled and stabilized with medication." R. 31. Although Plaintiff complains that the ALJ provided no "meaningful" evaluation of Dr. Lazarus' opinion, *Plaintiff's Reply Brief*, ECF No. 20, p. 4, a fair reading of the ALJ's discussion makes clear that the ALJ supported her conclusion with reference to the entire medical record and that she specifically considered the supportability and consistency factors when explaining why treatment notes and other evidence in the record rendered Dr. Lazarus'

opinion regarding Plaintiff's limitations as unpersuasive. R. 31. Accordingly, based on this record, the Court cannot find that the ALJ failed to properly consider the supportability and consistency of Dr. Lazarus' opinion in accordance with the governing regulations. *See* 20 C.F.R. § 404.1520c(c)(1)−(2); *see also Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3– 4 (E.D. Pa. Sept. 30, 2021) ("Here, the ALJ explicitly considered the supportability and consistency factors relative to Mr. Martelo's opinion by stating that the opinion was not well supported by and was inconsistent with the mental health records. R. at 27. The ALJ had no further responsibility to cite to the record, which contained over 1,000 pages."); *Erin H. v. Saul*, No. 2:20-CV-00191-MKD, 2021 WL 1182366, at *9 (E.D. Wash. Mar. 29, 2021) (stating that the "ALJ's finding that Dr. Clark's opinion is inconsistent with the longitudinal record was a specific and legitimate reason, supported by substantial evidence to reject the opinion[,]" including that "the treatment records generally reflect normal psychological functioning, including normal mood, affect, memory, orientation, behavior, concentration, attention, fund of knowledge, speech, comprehension, insight, and judgment").

Plaintiff goes on to argue that the diagnoses and limitations found by the state agency reviewing physicians, Stacy Koutrakos, Psy.D., and Frank Gonzales, Ph.D., also undermine the ALJ's finding that her mental impairments were not severe. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 19 (citing R. 106, 127); *Plaintiff's Reply Brief*, ECF No. 20, p. 3 (same). This Court disagrees. Dr. Koutrakos conducted an initial review of Plaintiff's medical record on May 1, 2018, R. 105−07, and found, *inter alia*, that Plaintiff's medically determinable impairments included, *inter alia*, anxiety and obsessive-compulsive disorders, but that these conditions were non-severe. R. 105. Dr. Koutrakos specifically considered Listing 12.04, which addresses depressive, bipolar, and related disorders, and Listing 12.06, which addresses anxiety and

17

obsessive-compulsive disorders, and found that Plaintiff had only mild limitations in four areas of functioning, *i.e.*, understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting or managing oneself. R. 106–07. Dr. Gonzales reviewed Plaintiff's medical record upon reconsideration for the state agency on August 26, 2018, and agreed with Dr. Koutrakos' opinions. R. 125–27. To the extent that Plaintiff suggests that these state agency physicians' opinions of only mild limitations support a finding that Plaintiff's mental health impairments were severe, this record clearly establishes that the state agency reviewing physicians agreed with the ALJ that Plaintiff's mental health impairments were non-severe. R. 31, 105, 125.[6] In addition, for the reasons already discussed, Plaintiff's suggestion that Dr. Gonzales' diagnoses of adjustment disorder with mixed anxiety and depressed moods, chronic, R. 126, establishes the severity of her mental health impairments is unavailing. *See Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780.

Plaintiff, however, challenges the ALJ's consideration of these opinions, complaining that the ALJ "assigned great weight to the opinion of Drs. Stacy Koutrakos and Frank Gonzales[.]" *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 27–29. Plaintiff's argument is not well taken. As a preliminary matter, the ALJ did not assign "great weight" to these opinions, but found them "persuasive" because the opinions were "supported by the longitudinal medical evidence contains minimal treatment for mental health symptoms and minimal complaints regarding these symptoms. Moreover, she has been prescribed Cymbalta by her primary care physician and her rheumatologist, but she rarely mentions mental health symptoms or complaints." R. 31. As it did with the ALJ's consideration of Dr. Lazarus' opinions, the Court

---

[6] Plaintiff's challenges to the RFC based on these physicians' opinions are addressed later in this Opinion and Order.

finds that the ALJ properly considered the supportability and consistency of the opinions of Dr. Koutrakos and Dr. Gonzales in accordance with the applicable regulation. *See* 20 C.F.R. § 404.1520c(c)(1)−(2); *Serrano*, 2021 WL 4477137, at *3−4 *Saul*, 2021 WL 1182366, at *9.

In continuing to challenge the ALJ's finding that her mental impairments were not severe, Plaintiff points to the fact that she takes Cymbalta and seeks the counsel of her pastor. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 19; *Plaintiff's Reply Brief*, ECF No. 20, p. 3. However, the ALJ specifically considered this evidence but noted that the evidence "rarely mentions mental health symptoms or complaints: and, "[o]verall, . . .[her] "mental health symptoms appear to [be] controlled and stabilized with minimal, conservative treatment." R. 30−31. Plaintiff has failed to persuade this Court that taking Cymbalta and meeting with her pastor establish that the ALJ erred in finding that Plaintiff's mental impairments are non-severe.

In final support of this argument, Plaintiff points to her own hearing testimony and to her reports that are noted in her physicians' records. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 18−19; *Plaintiff's Reply Brief*, ECF No. 20, pp. 2−3. However, as discussed in more detail below, the ALJ properly discounted Plaintiff's subjective statements and, as previously explained, the simple memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or medical opinion. *See Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25; *Famularo*, 2021 WL 613832, at *7.

Accordingly, Plaintiff has not shown that the ALJ erred at step two when assessing Plaintiff's mental health impairments.

### C.    RFC

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 12−29; *Plaintiff's Reply Brief*, ECF No. 20,

pp. 1–8. This Court disagrees.

A claimant's RFC is the most that a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can frequently handle and finger with the bilateral upper extremities; she cannot reach overhead with the bilateral upper extremities; she can frequently push and pull and operate hand controls and reach out front and laterally with the bilateral upper extremities; she must avoid concentrated exposure to vibration; and she must avoid all exposure to work place hazards such as unprotected heights and dangerous moving machinery.

R. 33. In making this determination, the ALJ detailed years of record evidence over several single-spaced pages, including, *inter alia*, that Plaintiff admitted that she takes college courses online as a full-time student, spends fourteen hours a week on classes and two hours a day on homework, and expected to graduate in December 2019; that Plaintiff underwent a cervical fusion and experienced a left shoulder impingement prior to her alleged disability onset date; that Plaintiff's surgeon, Fernando Delasotta, M.D., noted in April 2016 that Plaintiff had restricted neck range of motion in all directions, but that she retained normal gross motor and sensory deficits along with a normal gait; that in January 2018 Plaintiff reported some improvement of total body pain after having been prescribed Lyrica and that she retained a normal gait despite 14/18 tender points and that she had full range of motion in all joints and normal muscle strength and tone in all four limbs; that Juan Carlos Cornejo, D.O., examined Plaintiff in April 2018 and noted that Plaintiff was able to get on and off the examining table without difficulty, appeared comfortable in a seated position, retained full grip strength, full right arm strength, four out of five left rotator cuff strength, manifested no significant sensory deficits, full lower extremity strength, normal sensation in the lower extremities, normal lumbar and thoracic range of motion, a normal physiologic gait, and did not require any ambulatory aid; that, although Plaintiff reported continued pain in her joints in May 2018 and September 2018, her examination findings showed full joint range of motion, normal muscle strength of all four limbs, and normal gait; that, despite a finding of right carpal tunnel syndrome and Plaintiff's reports of continued pain in early 2019 along with difficulty raising her left arm overhead and numbness in the fourth and fifth digits of the left hand, Plaintiff had normal motor testing results and normal sensory exams; Dr. Delasotta's persuasive 2016 opinions that Plaintiff can work at the light exertional level but with reduced work above shoulder level, which were supported by Plaintiff's strength, range of

motion, and normal gait; and the August 2019 opinion of George Young, D.O., that Plaintiff could remain on modified duty with no lifting greater than 20 pounds along with no repetitive bending was consistent with that doctor's findings of normal reflexes, normal sensation of the upper extremities, and full motor strength and intact sensation. R. 33–39. The ALJ specifically addressed all of Plaintiff's impairments and complaints in considering her RFC:

> The claimant asserted considerable problems walking and standing, but the longitudinal medical evidence consistently notes full muscle strength of the lower extremities, full range of motion of [her] legs, and a normal gait. Instead, the claimant's longitudinal medical evidence shows that she can work at the light exertional level despite her physical impairments. Notably, regarding the claimant's obesity, in February 2019, the claimant was 62 inches tall and weighed 181 pounds, giving her a body mass index of 33.1 (Exhibit 35F, 22). Pursuant to SSR 19-2p, the undersigned considered the limiting effects of the claimant's obesity in assessing her residual functional capacity. The claimant's obesity, in combination with her other impairments, is reasonably related to the limitation to a reduced range of light work. Additionally, in order to avoid aggravating her symptoms, the claimant should only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. Likewise, due to the claimant's upper extremity impairment and her continued neck symptoms, the claimant should only frequently handle and finger bilaterally, frequently push, pull, and operate hand controls bilaterally, and frequently reach out front and laterally bilaterally. Moreover, she cannot reach overhead and she cannot climb ladders, ropes, or scaffolds. Furthermore, in order to avoid exacerbating her impairments, she must avoid concentrated exposure to vibration and she must avoid all exposure to workplace hazards. Accordingly, the undersigned finds that the objective evidence and other medical evidence regarding the claimant's degenerative disc disease of the cervical spine, status post cervical fusion, carpal tunnel syndrome on the right, cervicalgia, fibromyalgia, and left shoulder impingement syndrome supports the above residual functional capacity assessment.

R. 36. The ALJ also went on to explain as follows:

> In sum, the above residual functional capacity assessment is supported by the claimant's oral and written testimony, the objective medical evidence, and the opinions of medical professionals and the claimant's husband. A thorough assessment of all of the evidence shows that the claimant is able to perform work at the light exertional level with additional postural, environmental, and manipulative limitations as described above.

R. 39. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination on a number of bases. Plaintiff argues that the ALJ failed to properly consider all of Plaintiff's medically determinable impairments, both severe and non-severe, when crafting the RFC, including asthma, high cholesterol, fibromyalgia, and mental impairments.[7] *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 12−29; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1−8. Plaintiff's arguments are not well taken. As a preliminary matter, the ALJ expressly stated that she "has considered all medically determinable impairments, including those determined not to be severe, in assessing" Plaintiff's RFC. R. 31; *Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so.") (quoting *Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3rd Cir. 2008)).

As to her asthma and high cholesterol, Plaintiff complains that even though the record "repeatedly references those diagnoses" and argues that she continued to receive treatment for these conditions after her alleged disability onset date, the ALJ never considered those conditions. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 17; *Plaintiff's Reply Brief*, ECF No. 20, pp. 6−7. However, as previously discussed, a diagnosis of an impairment, without more, does not establish any functional limitation or disability. *See Foley*, 349 F. App'x at 808;

---

[7] To the extent that Plaintiff complains that the RFC does not adequately account for her migraine headaches, the Court has previously addressed that complaint.

*Phillips*, 91 F. App'x at 780. Although Plaintiff also asserts for the first time in her reply brief[8] that her asthma and high cholesterol, can "*potentially cause* serious health concerns for the Plaintiff that *could* preclude her from working such as standing or walking for an eight hour workday[,]" *Plaintiff's Reply Brief*, ECF No. 20, p. 7 (emphasis added), Plaintiff cites to no medical opinion that identifies any actual functional limitations flowing from these diagnoses. *See id*. Accordingly, even assuming that the ALJ erred in failing to expressly discuss Plaintiff's asthma and high cholesterol when fashioning the RFC, any such error is harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff's next argument raised for the first time in reply, *see Kolodesh*, 787 F.3d at 230 n.3; *Pelullo*, 399 F.3d at 222, *i.e.*, that the ALJ failed to properly consider her fibromyalgia when crafting the RFC, is based on simple rank speculation unsupported by any medical opinion. *Plaintiff's Reply Brief*, ECF No. 20, p. 7 ("Due to the fibromyalgia causing a weakened immune system and fatigue, this *could potentially be problematic* for the Plaintiffs asthma and *was the*

---

[8] The Court will consider this argument even though it need not address arguments raised for the first time in a reply brief. *See United States v. Kolodesh*, 787 F.3d 224, 230 n.3 (3d Cir. 2015) ("In support of the arguments raised in his opening brief, Kolodesh raises several new contentions in his reply brief. Those are waived and we do not address them further."); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir.2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); *Wright v. Comm'r of Soc. Sec.*, No. CV 15-6217, 2016 WL 5429649, at *5 (D.N.J. Sept. 27, 2016) (refusing to consider newly-raised argument in the reply brief and citing *Aiellos v. Zisa*, No. 09-3076, 2009 WL 3486301, at *1 (D.N.J. Oct. 20, 2009) ("It is hornbook law that arguments raised for the first time in a reply brief are waived[.]")).

*likely cause* of her multiple upper respiratory infections. Getting upper respiratory infections and wheezing *could potentially cause time off task* which is supported by the record.") (emphasis added). In any event, the ALJ specifically considered Plaintiff's fibromyalgia when crafting the RFC. R. 34–36.

Plaintiff also complains that the ALJ failed to consider her mental impairments when crafting the RFC, arguing that the ALJ should have accounted for Plaintiff's limitations in the functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 16, 18–20; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1–6. Plaintiff's arguments are not well taken. For the reasons previously discussed, the ALJ properly found that Plaintiff had only a mild limitation in her ability to concentrate, persist, or maintain pace, and no limitation in the remaining three functional areas. R. 31. Notably, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*. Moreover, as noted earlier, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554. Accordingly, the Court cannot conclude

that the ALJ committed reversible error when she failed to include any limitations in the RFC flowing from her mental impairments. *See id.*; *see also Marchionna v. Comm'r of Soc. Sec.*, No. 13-329, 2015 WL 12550917, at *2 (W.D. Pa. Jan. 29, 2015) (finding "no error with respect to the failure to include social functioning limitations in the RFC" where the Plaintiff had only "mild difficulties" in social functioning and a medical opinion to which the ALJ assigned great weight found that "Plaintiff was not significantly limited in any area of social interaction or adaptation"); *cf. D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *5–6 (D.N.J. May 10, 2021) ("[T]he Commissioner is correct that an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild. . . . Thus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it still does not warrant reversal.").

In continuing to challenge the RFC determination, Plaintiff complains that the ALJ "failed to properly weigh" the opinions of her treating physician, Raymond Marotta, M.D. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 24–27; *Plaintiff's Reply Brief*, ECF No. 20, pp. 8–9. As previously discussed, when evaluating the persuasiveness of medical opinions in claims filed after March 27, 2017, the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). On November 16, 2017, Dr. Marotta completed a four-page, fill-in-the-blank and check-the-box form entitled, "Physical Residual Functional Capacity Questionnaire." R. 1899–1902. Dr. Marotta indicated that he had treated Plaintiff since 2012; he diagnosed cervical radiculopathy, depression, and migraine syndrome, with symptoms that include persistent neck pain as well as shoulder and back pain, resulting in a decreased range of motion. R. 1899. He characterized Plaintiff prognosis as "poor," and opined that Plaintiff's

impairments have lasted or are expected to last at least twelve months. *Id*. According to Dr. Marotta, Plaintiff's depression and anxiety contributed to the severity of her symptoms and functional limitations, and were secondary to her pain. R. 1900. Moreover, Dr. Marotta opined that Plaintiff's impairments are reasonably consistent with her symptoms and functional limitations. *Id*. Additionally, Plaintiff's pain or other symptoms were severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks and that she was incapable of even low stress jobs. *Id*. He further opined that Plaintiff could walk only one city block without resting or severe pain and could sit or stand for only 30 minutes at a time. *Id*. Dr. Marotta further opined that Plaintiff could sit and stand/walk for less than two hours in an eight-hour working day (with normal breaks). R. 1901. According to Dr. Marotta, Plaintiff needed to include five-minute periods of walking around every fifteen minutes in an eight-hour working day and needed a job that permits shifting positions at will from sitting, standing, or walking. *Id*. Plaintiff would also need to take two five-minute unscheduled breaks daily and she needed to elevate her legs with prolonged sitting, specifically opining that she needed to elevate her legs for one hour if she had a sedentary job. *Id*. The doctor went on to opine that Plaintiff could rarely lift less than ten pounds, rarely turn her head to the left or right or look up and could never look down or hold her head in a static position. *Id*. Plaintiff could rarely stoop (bend) or climb stairs and could never twist, crouch/squat, or climb ladders. R. 1902. Dr. Marotta further opined that Plaintiff had significant limitations with reaching, handling, or fingering, finding that she could use her right hand to grasp, turn, twist objects and use her fingers for fine manipulation 50% of the day and could not use her left hand or fingers at all to perform these activities and could not use either arm for reaching. *Id*. According to Dr. Marotta, Plaintiff was likely to be absent more than four days per month as a result of her impairments or treatment. *Id*.

The ALJ found Dr. Marotta's opinion "not persuasive[,]" explaining as follows:

Dr. Raymond Marotta opined in November 2017 that the claimant could only sit, stand, or walk for less than two hours. Dr. Marotta added that the claimant is incapable of even "low stress" jobs. Dr. Marotta further asserted that the claimant needs to elevate her legs, take unscheduled breaks, shift positions at will, lift less than ten pounds rarely, and perform minimal neck activities and postural activities (Exhibit 32F). The undersigned finds this opinion is not persuasive. This opinion is extreme and unsupported by the claimant's treatment notes from November 2017. In the months prior to this opinion, the claimant sought minimal treatment and continued to take only Ibuprofen for her pain. Moreover, the subsequent examination findings in 2018 show considerable muscle strength, upper and lower extremity range of motion, and a normal gait (Exhibits 9F, 28; 13F; 25F, 15).

R. 36−37. Plaintiff challenges this evaluation, arguing that Dr. Marotta's opinion is consistent

with his treatment notes. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 24 (citing R. 1301,

1326); *Plaintiff's Reply Brief*, ECF No. 20, pp. 8−9. This Court disagrees. As a preliminary

matter, one of the notes upon which Plaintiff relies is from an office visit on January 11, 2016,

*i.e.*, before Plaintiff's disability onset date of May 6, 2016, and well over a year before Dr.

Marotta's November 2017 opinion. R. 1326. Although Plaintiff also cites to Dr. Marotta's

treatment note from an office visit on November 16, 2017, this evidence simply reflects Dr.

Marotta's report of Plaintiff's subjective statement that she "has been feeling poorly," which Dr.

Marotta attributes to Plaintiff's reported neck and upper back pain and "abnormal lab test"

revealing "elevated SE and abnormal ANA[.]" R. 1301 During the same visit, Dr. Marotta also

went on to note that Plaintiff reported her neck pain as a six on a 0−10 scale, and upon

examination, noted diffuse tenderness of the trapezius, but no lymphadenopathy and no

generalized swelling or edema of extremities. R. 1302−03. He further noted no anxiety, change

in sleep pattern, depression, feeling down or hopeless, feeling little interest or pleasure, panic

attacks, suicidal ideation, trouble falling asleep, or trouble staying asleep. R. 1302. In an office

visit on November 7, 2017, psychiatric issues, neck mass, and neck pain were noted as "Not

Present," R. 1306, and that Plaintiff had a normal posture and normal gait, R. 1307. The Court

agrees with the ALJ that these findings do not support the extreme limitations in Dr. Marotta's

November 2017 opinion. R. 37, 1899−1902.

Plaintiff further argues that Dr. Marotta's functional assessments "are consistent with his

notes from not only November of 2017, but also from other treatment notes throughout his time

of treating her[,]" noting that Dr. Marotta "also diagnose[d] her with chronic neck pain, anxiety,

and depression on multiple occasions[] (R. 1311, 1322, 1326, 1329, 1331)" and "has treated the

Plaintiff for her shoulder pain and head pain. (R. 1334, 1329)." *Plaintiff's Memorandum of Law*,

ECF No. 18, p. 25; *Plaintiff's Reply Brief*, ECF No. 20, pp. 8−9. However, as previously

explained, a diagnosis of an impairment, without more, says nothing about the functional

limitations or disability flowing from that impairment. *See Foley*, 349 F. App'x at 808; *Phillips*,

91 F. App'x at 780. Moreover, the fact that the doctor treated Plaintiff for shoulder and neck pain

on two occasions in 2015, R. 1334, 1329, does not persuade this Court that the ALJ erred in her

evaluation of Dr. Marotta's extreme opinion articulated in November 2017.

Plaintiff also cites to Dr. Delasotta's findings in April 2016, apparently believing that

these findings support Dr. Marotta's opinion. *Plaintiff's Memorandum of Law*, ECF No. 18, pp.

24−25 (citing R. 733−34). However, as Plaintiff concedes, *id*. at 25, despite finding some

physical limitations, Dr. Delasotta nevertheless opined that Plaintiff could work in a light duty

capacity. R. 735−38. Plaintiff also points to her own hearing testimony and in her reports noted

in medical records, *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 24−26. However, as

discussed in more detail below, the ALJ properly discounted Plaintiff's subjective statements

and, as previously explained, simply memorializing a claimant's subjective complaints in a

medical record does not transform those complaints into objective findings or a medical opinion.

*Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25; *Famularo*, 2021 WL 613832, at *7.

Plaintiff goes on to complain that the ALJ improperly discounted Dr. Marotta's opinion as inconsistent with his own records, yet found "persuasive" the August 2019 opinion of treating physician George Young, D.O., because it is consistent with Dr. Young's own records. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 25–26 (arguing that such disparate consideration reflects "cherry pick[ing]"); *Plaintiff's Reply Brief*, ECF No. 20, p. 9.[9] However, Plaintiff's argument in this regard is based on the false premise that Dr. Marotta's opinion is consistent with his own treatment notes, *see id.*, which this Court has already explained is not the case. R. 37–38.

Plaintiff also contends that the ALJ erred in discounting Dr. Marotta's opinion "because the Plaintiff sought minimal treatment and continued to take only Ibuprofen for her pain[,]" *Plaintiff's Memorandum of Law*, ECF No. 18, p. 26 (citing R. 37), where Plaintiff "testified that she was currently taking Topamax, Gabapentin, Zocor, Synthroid, Cymbalta, Ibuprofen, and Lidocaine patches due to her impairments[,]" "sought treatment in 2019 from Dr. Young due to her neck pain and due to the fact that her right arm gets paralyzed and she has to have someone help her move it[,]" and "received injections in July 2019." *Id.* (citing R. 69, 1923, 1925). Plaintiff, however, misreads the ALJ's decision, which specifically finds that "[*i*]*n the months prior to this* [Dr. Marotta's November 2017] *opinion*, the claimant sought minimal treatment and continued to take only Ibuprofen for her pain." R. 37 (emphasis added). Moreover, as Plaintiff

---

[9] Dr. Young opined that Plaintiff "will remain on modified duty with no repetitive bending or lifting greater than 20 pounds." R. 1928. The ALJ found "this opinion persuasive because it is consistent with Dr. Young's findings including normal reflexes, normal sensation, normal sensation of the upper extremities, and full motor strength, along with intact sensation." R. 38.

acknowledges, *Plaintiff's Memorandum of Law*, ECF No. 18, p. 26, the ALJ went on to find that "subsequent examination findings in 2018 show considerable muscle strength, upper and lower extremity range of motion, and a normal gait[.]" R. 37−38.

Finally, Plaintiff contends that the ALJ "failed to find that the Plaintiff satisfied her burden of proving disability for at least a 12-month period." *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 20−21; *see also Plaintiff's Reply Brief*, ECF No. 20, pp. 7−8. Plaintiff specifically argues that the record establishes that she was unable to sustain work "because she was simply unable to maintain regular attendance due to her impairments." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 21. In support of this argument, Plaintiff contends that (1) "The Decision itself even recognizes that the Plaintiff had physical therapy 35 times following her cervical fusion. (R. 35)"; (2) Plaintiff "had another four weeks of physical therapy in 2019. (R. 35)"; and (3) Dr. Marotta opined that Plaintiff would be absent from work more than four days per month, R. 1902." *Id.*; *see also Plaintiff's Reply Brief*, ECF No. 20, pp. 7−8.; Plaintiff notes that, according to the vocational expert, an individual who misses more than two days of work per month cannot perform work of any kind in the national economy, thereby establishing Plaintiff's disability and inability to sustain work. *Plaintiff's Reply Brief*, ECF No. 20, p. 7.

Plaintiff's arguments are not well taken. First, as the Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, pp. 24−25, Plaintiff's cervical fusion and referenced 35 physical therapy sessions occurred before April 18, 2016, Plaintiff's alleged disability onset date, R. 733, and are therefore immaterial to her claim. Moreover, the evidence suggests that Plaintiff continued to work during the period of time that she also underwent physical therapy. R. 1026 ("*Continue working* in a light duty capacity" as of January

18, 2016) (emphasis added), 1029 ("*Continue working* sedentary duty" as of December 2, 2015) (emphasis added). Finally, Plaintiff relies on Dr. Marotta's opinion that Plaintiff would need to miss more than four days of work a month "as a result of the impairments or treatment;" however, for the reasons previously discussed, this Court concludes that the ALJ properly found that this opinion was unpersuasive.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Marotta's opinion.

### D.    Subjective statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 29–33; *Plaintiff's Reply Brief*, ECF No. 20, pp. 9–12. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit

32

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[10]

---

[10]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints and found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 34; *see also* R. 34−35 ("The claimant's statements about the alleged intensity, persistence, and limiting effects of symptoms are inconsistent with and are not substantiated by the objective medical evidence. The objective medical evidence only partially supports the claimant's allegations."). As previously discussed, the ALJ detailed years of medical evidence and record testimony over several single-spaced pages to support her findings. R. 34−39. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

However, Plaintiff complains that the ALJ failed to consider the side effects of Plaintiff's prescription medication. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 33; *Plaintiff's Reply Brief*, ECF No. 20, p. 12. This Court disagrees. The ALJ expressly stated that she considered, *inter alia*, "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms[.]" R. 34. Moreover, during the hearing, the ALJ specifically asked Plaintiff whether she experienced any side effects from her medication, and she responded that the only side effect was a "little fatigue[]." R. 69. Plaintiff then went on to explain that she was fatigued anyway from her fibromyalgia, *id.*, an impairment that the ALJ found to be severe at step two and which the ALJ specifically considered when crafting the RFC determination. R. 29, 34−36. Additionally, the ALJ expressly explained at step

34

two that Plaintiff's chronic fatigue did not impose more than a minimal limitation on Plaintiff's ability to work on a regular and continuing basis. R. 30.

To the extent that Plaintiff now asserts that the ALJ failed to properly consider previously unidentified symptoms, Plaintiff's arguments are unavailing. As to alleged weight gain, the ALJ expressly considered Plaintiff's obesity in fashioning her RFC. R. 36. Notably, Plaintiff never alleged that her obesity restricted her ability to work. R. 60−63, 240. Plaintiff goes on to assert that she experiences severe nightmares with Cymbalta and that "Ibuprofen also causes gastrointestinal upset when she takes it too often," but she does not explain how this undermines the ALJ's consideration of her subjective statements or otherwise requires additional or different limitations in her RFC. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 33 (citing R. 1739, 1761). For the first time in her reply, *see Kolodesh*, 787 F.3d at 230 n.3; *Pelullo*, 399 F.3d at 222, Plaintiff speculates that, because that her sleep is poor and she has trouble getting out of bed (apparently suggesting that these problems are related to the severe nightmares allegedly caused by Cymbalta), she "would *likely* need breaks due to her severe fatigue caused by her fibromyalgia and current medications." *Plaintiff's Reply Brief*, ECF No. 20, p. 12 (citing R. 34, 1739, 1832). However, the ALJ properly considered Plaintiff's fatigue in connection with her RFC. *Cf. Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness [that] often accompanies the taking of medication, … should not be viewed as disabling unless the record references serious functional limitations.").

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### E.     Third-Party Statements

Finally, Plaintiff contends that the ALJ erred when considering the third-party statements of Plaintiff's husband. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 31; *Plaintiff's Reply Brief*, ECF No. 20, pp. 9–10. The Court of Appeals for the Third Circuit expects an ALJ to address the testimony of third-party witnesses. *Burnett,* 220 F.3d at 122; *see also* SSR 16-3p (providing that an ALJ must consider "the entire case record, including . . . information provided by . . . other persons")).

In the case presently before the Court, the ALJ considered Plaintiff's husband's statements as follows:

> The claimant's husband, Lawrence [F.], provided third party statements in February 2018 and July 2018 (Exhibits 5E, 10E). The claimant's husband stated that the claimant has problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands. These statements are evidence from a nonmedical source, which does not require consideration using the supportability and consistency analysis discussed above (See 20 CFR 404.1520c(d))). However, the undersigned has considered this statement in assessing the claimant's residual functional capacity. The undersigned finds the husband's statements to be somewhat persuasive because the claimant's husband has strong knowledge of her conditions from interacting with him on a daily basis. However, this persuasiveness is limited because the claimant's husband is not a medical professional or an objective third party.

R. 39. Plaintiff contends that the ALJ improperly discounted Plaintiff's husband's statements,

resulting in reversible error. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 31; *Plaintiff's Reply Brief*, ECF No. 20, pp. 9–10. Even assuming, for the sake of argument, that the ALJ erred in discounting these statements, Plaintiff has not explained how any such error harmed her. She generally asserts that "the statements of the source comport strongly with the Plaintiff's own statements and those of her treating physicians." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 31. However, Plaintiff never identifies the particular statements or otherwise explains what these statements reveal or how they support Plaintiff's subjective statements or a finding of disability. *See id.*; *see also Plaintiff's Reply Brief*, ECF No. 20, pp. 9–10. The Court will not hunt through the cited pages to find evidence or construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Plaintiff, who bears the burden of proof at step four, does not offer any substantive analysis to support this conclusory assertion. *See id*. The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *Cf Atkins*, 810 F. App'x at 129 ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec*., 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory,

undeveloped accusation.") (citations omitted).

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  January 24, 2022                         *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE